RECEIVED
IN MONROE, LA

FEB 2 5 2008

ROBERT H. SHEMWELL, CLERK
WESTERN DISTRICT OF LOUISIANA

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

MONROE DIVISION

| | |
|---|---|
| **GREAT AMERICAN INSURANCE COMPANY** | **CIVIL ACTION NO. 07-881** |
| **VERSUS** | **JUDGE ROBERT G. JAMES** |
| **EUGENE McLAIN CONSTRUCTION COMPANY, INC., ET AL** | **MAG. JUDGE KAREN L. HAYES** |

## RULING

This is a breach of contract case brought by Plaintiff Great American Insurance Company ("GAI") against Defendants Eugene McLain Construction Company, Inc. ("McLain Construction") and Lennie Mae Wilson McLain ("Mrs. McLain") (collectively "Defendants").

Pending before the Court is GAI's unopposed Motion for Partial Final Summary Judgment and for Confession of Partial Final Judgment ("Motion for Partial Summary Judgment"). [Doc. No. 39]. For the following reasons, GAI's Motion for Partial Summary Judgment [Doc. No. 39] is GRANTED.

### I. FACTS AND PROCEDURAL HISTORY

To ensure satisfactory completion of its construction projects, McLain Construction obtains payment and performance bonds from GAI. Before agreeing to issue bonds to McLain Construction, GAI required Eugene McLain, as the owner of McLain Construction, to indemnify GAI for any loss or expense incurred from claims against the bonds. Eugene McLain, however, died in 2005. His wife, Mrs. McLain, and son, Tony McLain, then took over McLain Construction. On August 1, 2006, Mrs. McLain executed an agreement ("Second Indemnity

Agreement") under which she, as her husband had done previously, agreed to indemnify GAI from any loss or expense resulting from claims against GAI bonds. Under the Second Indemnity Agreement, GAI was granted authority to confess judgment on behalf of Mrs. McLain and McLain Construction.

On or about November 16, 2006, McLain Construction entered into a contract ("the Contract") with Primary Health Services Center, Federally Qualified Health Center ("Primary Health") to construct the Primary Health Services Center ("the PHSC"), at 2913 Desiard Street in Monroe, Louisiana. Under the Contract, McLain Construction was obligated to begin work on January 9, 2007, and complete work within 120 days, i.e., May 10, 2007. McLain Construction was also obligated to pay $50.00 in liquidated damages for each day it was late in completing the PHSC. To ensure completion of the PHSC, GAI furnished a payment and performance bond ("the Bond") to McLain Construction. Under the Bond, McLain Construction was the principal, Primary Health was the obligee, and GAI was the surety.

On April 14, 2007, about one month before the scheduled completion of the PHSC, McLain Construction abandoned the work-site, mailed the keys and plans to the project's architect, Space Planners - Architects, Inc. ("Space Planners"), and instructed Space Planners to contact GAI about completing construction. The officers of McLain Construction subsequently voted to dissolve the company. Primary Health then demanded that GAI, as McLain Construction's surety, ensure the completion of the PHSC.

GAI honored its obligations and ensured the PHSC was completed. GAI, however, incurred losses and expenses in the process. After unsuccessfully seeking reimbursement from Defendants, GAI brought the instant case, alleging that McLain Construction and Mrs. McLain

2

breached the Second Indemnity Agreement and must therefore reimburse it for the losses and expenses incurred while completing the PHSC.

## II. LAW AND ANALYSIS

### A. Summary Judgment Standard of Review

A motion for summary judgment cannot be granted simply because there is no opposition. An unopposed motion seeking summary judgment shall be entered "if appropriate." Fed. R. Civ. P. 56(e). Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).

The moving party bears the initial burden of informing the court of the basis for its motion by identifying portions of the record which highlight the absence of genuine issues of material fact. Topalian v. Ehrmann, 954 F.2d 1125, 1132 (5th Cir. 1992). A fact is "material" if proof of its existence or nonexistence would affect the outcome of the lawsuit under applicable law in the case. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute about a material fact is "genuine" if the evidence is such that a reasonable fact finder could render a verdict for the nonmoving party. Id. Unless the moving party meets this burden, the court may not grant the unopposed motion, regardless of whether any response was filed. Hetzel v. Bethlehem Steel Corp., 50 F.3d 360, 362 (5th Cir. 1995).

However, Defendants' failure to file an opposition and statement of contested material facts requires the Court to deem GAI's statement of uncontested material facts admitted for purposes of the instant motion. Local Rule 56.2W.

3

## B. Defendants' Obligation to Pay

The contract of indemnity forms the law between the parties and must be interpreted according to its own terms and conditions. Commercial Union Ins. Co. v. Melikyan, 82-0624 (La. App. 1 Cir. 4/5/1983); 430 So.2d 1217, 1221(citing Grady v. Alfonso, 315 So.2d 832 (La. App. 4th Cir. 1975)). In a surety contract, the surety cannot be bound to the obligee to any greater extent than the obligation contained in the agreement between the obligor and obligee. Id. In an indemnity contract, on the other hand, the principal and indemnitors can be bound to the surety in any manner they elect. Id.

Under Louisiana law, indemnity provisions are construed in accordance with general rules governing contract interpretation. Great Am. Ins. Co. v. McElwee Bros., Inc., No. 03-30979, 106 Fed. Appx. 197, 200 (5th Cir. June 16, 2004) (citing Liberty Mut. Ins. Co. v. Pine Bluff Sand and Gravel Co., 89 F.3d 243, 246 (5th Cir. 1996)); see also Sovereign Ins. Co. v. Texas Pipe Line Co., 488 So.2d 982, 984 (La. 1986). Interpretation of a contract is the determination of the common intent of the parties. Great Am. Ins. Co., 106 Fed. Appx. at 201 (citing La. Civ. Code Ann. art.2045). When the terms of a contract are clear and explicit and lead to no absurd consequences, the Court interprets them as a matter of law, and no further interpretation may be made in search of the parties' intent. Id. (citing Texas Eastern Transmission Corp. v. Amerada Hess Corp., 145 F.3d 737, 741 (5th Cir.1998)). On the other hand, ambiguity in the terms of a contract gives rise to a fact question concerning the intent of the parties. Id. (citing Liberty Mutual, 89 F.3d at 246).

Under the Second Indemnity Agreement, McLain Construction and Mrs. McLain agreed jointly, severally, and collectively to exonerate, indemnify, and hold harmless GAI against any

4

and all liability, losses, costs, and expenses incurred by (1) having executed or procured the execution of bonds on behalf of McLain Construction or Mrs. McLain; (2) the failure of McLain Construction and Mrs. McLain to perform or comply with the covenants and conditions of the Second Indemnity Ageement; or (3) enforcing any of the terms, covenants or conditions of the Second Indemnity Agreement. In sum, Mrs. McLain and McLain Construction are obligated to reimburse GAI for all good faith Bond-related disbursements that GAI believed it was obligated to pay, including GAI's attorney's fees and other legal expenses incurred while enforcing the Second Indemnity Agreement. Finally, the Second Indemnity Agreement also authorizes GAI to "appear for and confess judgment against any of [McLain Construction and McLain ] for any sum or sums due under [the Second indemnity Agreement] . . ."

GAI alleges that at the time it filed the instant motion for summary judgment Defendants owed $159,497.53 under the Second Indemnity Agreement. Specifically, GAI alleges it has incurred the following expenses:

### 1. Performance Losses

#### a. Payment to Delta Constructors, Inc.

GAI paid Delta Constructors, Inc. $13,740.42[1] to (1) assess what work was necessary to complete the PHSC, (2) locate and recommend a contractor acceptable to Primary Health, and (3) identify, locate, and contact McLain Construction's subcontractors about working for a new contractor.

---

[1] In the instant motion, GAI states "[GAI] paid Delta $13,740.00 for its services," but the evidence cited for this point indicates that GAI actually paid Delta Constructors $13,740.42. GAI used the greater amount when it summarized its losses and expenses on page eight of its Motion for Partial Summary Judgment.

5

### b. Payment to Traxler Construction, Inc.

Upon the advice of Delta Constructors, GAI hired Traxler Construction, Inc. to complete the PHSC. Traxler charged $138,092.59, which exceeded the $70,142.80 balance Primary Health was obligated to pay under the Contract. GAI, as the Contract Surety, was therefore required to pay $67,949.79 to cover the excess cost of completing the PHSC. GAI seeks reimbursement for that amount.

### c. Liquidated Damages for Delay

The Contract provided that after May 10, 2007, McLain was obligated to pay $50.00 in liquidated damages for each day that the PHSC was not completed. Because Traxler completed the PHSC 110 days after the scheduled completion date, GAI paid Primary Health $5,500.00 in liquidated damages. GAI seeks to recover these damages.

### d. Unpaid Utilities

Under the Contract, McLain Construction was obligated to pay Primary Health the cost of utilities used to complete the PHSC. When McLain Construction defaulted, it owed Primary Health $7,307.64 in utility costs. GAI paid Primary Health for those utilities and seeks recovery for those losses.

### e. Fees for Office Space

After the default, Space Planners provided GAI with office space to manage the project until Traxler could take over. Space Planners charged GAI $500.00 for the office space, and GAI seeks recovery for this amount.

### 2. Payment Losses

When McLain Construction abandoned the PHSC work-site, it still owed subcontractors

and suppliers $26,516.97. GAI paid those subcontractors and suppliers and seeks to recover those losses.

### 3. Legal Expenses

Jeffrey S. Woodard, a bond claim attorney employed by GAI, traveled to Monroe on June 26, 2007, to meet with Space Planners and assess the status of the PHSC. Mr. Woodard also traveled to Monroe on July 2, 2007, to attend a hearing regarding GAI's request for preliminary injunction. Between these two trips, Mr. Woodard incurred $2,241.88 in travel, meal, and lodging expenses.

To date, GAI has paid the firm of Krebs, Farley and Pelleteri $35,473.83 in legal costs. Also, GAI, shortly after McLain Construction's default, paid Shields Mott Lund $267.00 to record the Second Indemnity Agreement in Ouachita Parish. In total, GAI has incurred $37,982.71 in legal fees and expenses.

### D. Summary of Expenses and Losses

In sum, GAI has incurred the following losses and expenses:

| | |
|---|---|
| **Performance Losses** | |
| Payment to Delta Constructors, Inc. | $13,740.42 |
| Payment to Traxler Construction, Inc. | $67,949.79 |
| Liquidated damages for delay | $5,500.00 |
| Utility Payments | $7,307.64 |
| Office Space Fees | $500.00 |
| **Payment Losses** | |
| Payments to Subcontractors | $26,516.97 |
| **Legal Expenses** | |
| Payments to Krebs, Farley and Pelleteri; Mr. Woodard; and Shield Mott Lund | $37,982.71 |
| **Total** | **$159,497.53** |

The Court finds that there is no genuine issue of material fact as to the expenses and losses incurred by GAI. Therefore, the Court will enter partial summary judgment in favor of GAI in the amount of $159,497.53. GAI still maintains claims for future losses and expenses that might occur as a result of Defendants' default.

## III. CONCLUSION

For the foregoing reasons, GAI's unopposed Motion for Partial Summary Judgment [Doc. No. 39] is GRANTED.

MONROE, LOUISIANA, this \_\_\_23\_\_\_ day of \_\_\_February\_\_\_, 2008.

_____
ROBERT G. JAMES
UNITED STATES DISTRICT JUDGE

8